**U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CIT COMMUNICATIONS FINANCE CORPORATION, f/k/a AT&T Credit Corporation, a Delaware corporation, | ) FILED: NOVEMBER 10, 2008 <br> ) 08 CV 6458 <br> ) JUDGE COAR <br> ) MAGISTRATE JUDGE NOLAN <br> )     Case Number: |
| Plaintiff, | ) |
| v. | ) PH   Assigned Judge: <br> ) |
| WES-TECH AUTOMATION SOLUTIONS, LLC, f/k/a Wes-Tech Automation Systems, LLC, an Illinois limited liability company; RICHARD GILCHRIST; RALLY CAPITAL SERVICES, LLC, an Illinois limited liability company; and HOWARD B. SAMUELS; | )     Designated Magistrate Judge: <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff, CIT Communications Finance Corporation, for its Complaint against defendants Wes-Tech Automation Solutions, LLC, Richard Gilchrist, Rally Capital Services, LLC, and Howard B. Samuels, states as follows:

### GENERAL ALLEGATIONS

#### Jurisdiction and Venue

1.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1).

2.     Venue is proper in this district under 28 U.S.C. 1391(a)(2).

#### The Parties

3.     CIT Communications Finance Corporation, formerly known as AT&T Credit Corporation, is a Delaware corporation ("CIT") with its principal place of business in New Jersey.

4.     Wes-Tech, Inc. doing business as Westech Automation Systems is an involuntarily dissolved Illinois corporation as of September 1, 2005, ("Wes-Tech") with its

principal place of business located at 720 Dartmouth Lane, Buffalo Grove, Illinois (the "Premises").

5. Wes-Tech Automation Solutions, LLC, formerly known as Wes-Tech Automation Systems, LLC, is an Illinois limited liability company, with its principal place of business located at the Premises ("New Wes-Tech").

6. New Wes-Tech's sole member is John J. Veleris, an Illinois resident.

7. Richard Gilchrist is an Illinois resident ("Gilchrist").

8. Rally Capital Services, LLC is an Illinois limited liability company with its principal place of business located in Chicago, Illinois ("Rally").

9. Rally's members are Daniel T. Lee, Steve Baer, and Howard B. Samuels. All three Rally members are Illinois residents.

10. Howard B. Samuels is an Illinois resident ("Samuels").

### Common Facts

11. CIT leased a Merlin Legend telephone system to Wes-Tech pursuant to a Lease Agreement No. M501518 Schedule 30 dated February 25, 1998, purportedly executed by Gilchrist as vice president of Wes-Tech ("Lease Agreement"). A copy of the Lease Agreement is attached hereto as **Exhibit A.**

12. The Lease Agreement provides for Wes-Tech to make 60 monthly payments to CIT, each payment in the amount of $1,459.93 plus applicable taxes. *See* page 1 of **Exhibit A.** Pursuant to the Lease Agreement the monthly rental payment was adjusted to $1,629.68.

13. Subsequently, CIT leased additional Merlin Legend telephone equipment to Wes-Tech pursuant to Lease Agreement No. M501518 Schedule 50 in accordance with paragraph 15

of the Lease Agreement ("Schedule 50"). A copy of Schedule 50 is attached hereto as **Exhibit B.**

14. Schedule 50 provides for Wes-Tech to make first payment at $0 and then 57 monthly payments to CIT, each payment in the amount of $59.15 plus applicable taxes. *See* **Exhibit B.**

15. Also, CIT leased additional Merlin Legend telephone equipment to Wes-Tech pursuant to and Lease Agreement No. M501518 Schedule 60 and in accordance with paragraph 15 of the Lease Agreement ("Schedule 60"). A copy of Schedule 60 is attached hereto as **Exhibit C.** The Lease Agreement together with Schedule 50 and Schedule 60 are collectively referred to as the "Lease." The Merlin Legend telephone equipment leased pursuant to the Lease is collectively referred to as the "Equipment."

16. Schedule 60 provides for Wes-Tech to make 56 additional monthly payments to CIT in the amount of $138.12 plus applicable taxes. *See* **Exhibit C.**

17. In or about December 2004, New Wes-Tech acquired the assets of Wes-Tech.

18. Wes-Tech, New Wes-Tech, Samuels, and/or Ralley failed to furnish CIT with an actual notice of Wes-Tech's asset sale.

19. Wes-Tech, New Wes-Tech, Samuels, and/or Ralley failed to furnish CIT with an actual notice of New Wes-Tech's use and/or possession of the Equipment.

20. On or about December 20, 2006, CIT arranged for an inspection of the Equipment pursuant to the Lease. A copy of the inspection report is attached hereto as **Exhibit D**; *see* also **Exhibit A.**

21. At the time of inspection, Don Gross, Vice President of New Wes-Tech, stated that CIT's Equipment was located at the Premises. *See* the 4th paragraph of **Exhibit D.**

22. The Equipment has been located at the Premises from the date Wes-Tech leased the Equipment to December 20, 2006. *See* **Exhibit D.**

23. Upon information and belief, the Equipment has been located at the Premises from December 20, 2006 to the present time.

24. New Wes-Tech failed to make any payments to CIT for its use and/or possession of the Equipment since its acquisition thereof.

25. New Wes-Tech failed to return the Equipment to CIT.

26. CIT is the lawful owner of the Equipment as indicated in the Lease, a true lease. *See* paragraph 7 of **Exhibit A.**

27. CIT is lawfully entitled to possession of its Equipment in accordance with the Lease. *See* paragraph 7 of **Exhibit A.**

**COUNT I**
**CONVERSION**
**AGAINST NEW WES-TECH**

28. CIT re-alleges paragraphs 1 through 27 as paragraph 28.

29. On or about November 27, 1997, March 11, 1998, and June 16, 1998, Wes-Tech agreed that it would pay to CIT monthly rental payments for its use and possession of the Equipment. *See* attached **Exhibits A, B,** and **C.**

30. Upon information and belief, in or about December 2004, Wes-Tech, being in possession of the Equipment as lessee pursuant to the Lease, delivered the Equipment to Samuels as its agent pursuant to an assignment for the benefit of creditors.

31. Upon information and belief, in or about December 2004, Samuels sold and delivered the Equipment to New Wes-Tech.

32. Prior to the commencement of this action, CIT demanded of New Wes-Tech that it return the Equipment to CIT. A copy of the demand letter is attached hereto as **Exhibit E.**

33. New Wes-Tech has refused to return the Equipment. A copy of the letter from New Wes-Tech's counsel is attached hereto as **Exhibit F.**

34. New Wes-Tech wrongfully and without authorization from CIT assumed control over the Equipment and discarded the Equipment. *See* **Exhibit F.**

35. New Wes-Tech assumed ownership of the Equipment to its own use all to CIT's damage in excess of $163,500. *See* **Exhibit F.**

36. New Wes-Tech acted willfully and with wanton disregard of CIT's rights.

**WHEREFORE**, CIT prays that this Court enter an order in its favor and against New Wes-Tech, awarding CIT the following:

A. Damages in excess of $163,500;

B. Punitive damages;

C. Costs of this action; and

D. Any other relief as the Court deems just.

## COUNT II
## QUANTUM MERUIT
## AGAINST NEW WES-TECH

37. CIT re-alleges paragraphs 1 through 27 as paragraph 37.

38. From on or about December 20, 2004, to the present New Wes-Tech concealed and continues to conceal its possession of the Equipment.

39. New Wes-Tech failed and continues to fail to pay to CIT the monthly rental payments for its use and possession of the Equipment.

40. New Wes-Tech has benefited and continues to benefit from its use and possession of CIT's Equipment.

41. As a result of New Wes-Tech's actions, CIT has been damaged in excess of $163,500.

**WHEREFORE**, CIT prays that this Court enter an order in its favor and against New Wes-Tech as follows:

A. For a judgment against New Wes-Tech for any sums found to be due CIT from New Wes-Tech for its use and possession of the Equipment;

B. To find New Wes-Tech liable to CIT in the amount to be determined, plus pre-judgment interest;

C. For the value of the Equipment;

D. For attorneys' fees and costs; and

E. For any further relief as this Court deems just.

## COUNT III
## SUCCESSOR LIABILITY
## AGAINST NEW WES-TECH

42. CIT re-alleges paragraphs 1 through 27 as paragraph 42.

43. New Wes-Tech's principal place of business is the same as Wes-Tech's principal place of business.

44. In or about September 2005, New Wes-Tech assumed the name Westech Automation Systems, a name used by Wes-Tech as its assumed name to conduct business until Wes-Tech's dissolution in or about September 2005.

45. Richard Gilchrist, formerly employed by Wes-Tech as a vice president is presently employed by New Wes-Tech in a similar capacity.

6

#167457

46. New Wes-Tech employs the same corporate officers as Wes-Tech. A copy of the corporate management list of Wes-Tech is attached hereto as **Exhibit G**; a copy of the New Wes-Tech corporate management list is attached hereto as **Exhibit H.**

47. Upon information and belief, New Wes-Tech employs the same employees as Wes-Tech.

48. Upon information and belief, New Wes-Tech's ownership is the same as Wes-Tech's.

49. New Wes-Tech engages in substantially the same business as the business formerly conducted by Wes-Tech.

50. New Wes-Tech is a mere continuation of Wes-Tech.

51. As Wes-Tech's successor, New Wes-Tech is responsible for the amounts due to CIT from Wes-Tech under the Lease.

52. Pursuant to the Lease, CIT is entitled to all of the payments now due under the Lease, interest thereon, reasonable attorneys' fees and costs. *See* **Exhibits A, B,** and **C.**

**WHEREFORE**, CIT prays that this Court enter an order in its favor and against New Wes-Tech for:

A. A judgment in an amount equal to the payments due under the Lease from the time New Wes-Tech acquired the Equipment through the date of judgment, plus interest, costs and attorneys' fees as provided in the Lease;

B. Attorneys' fees and costs in connection with bringing this action; and

C. Any other relief as the court deems just.

7

## COUNT IV
## CONVERSION
## AGAINST GILCHRIST

53.     CIT re-alleges paragraphs 1 through 27 as paragraph 53.

54.     On or about November 27, 1997, Gilchrist executed the Lease Agreement with CIT and agreed to the terms and conditions therein.  *See* **Exhibit A.**

55.     The Lease Agreement provides that the Equipment is owned by CIT.  *See* **Exhibit A.**

56.     In or about December 2004, Wes-Tech, being in possession of the Equipment as lessee pursuant to the Lease, delivered the Equipment to Samuels as its agent pursuant to an assignment for the benefit of creditors.

57.     Upon information and belief, in or about December 2004, Samuels sold and delivered the Equipment to New Wes-Tech.

58.     Upon information and belief, Gilchrist is employed as an officer of New Wes-Tech.

59.     Prior to the commencement of this action, CIT demanded of New Wes-Tech that it return the Equipment to CIT.  *See* **Exhibit E.**

60.     New Wes-Tech has refused to return the Equipment and/or deliver monies received therefore.  *See* **Exhibit F.**

61.     Gilchrist failed to notify CIT of the change in possession leading New Wes-Tech to wrongfully and without authorization to assume control over the Equipment and discarded the Equipment.  *See* **Exhibit F.**

62.     Due to Gilchrist's failure to notify CIT, New Wes-Tech assumed ownership of the Equipment to its own use all to CIT's damage in excess of $163,500.  *See* **Exhibit F.**

63. Gilchrist acted willfully and with wanton disregard of CIT's rights.

**WHEREFORE**, CIT prays that this Court enter an order in its favor and against Richard Gilchrist, awarding CIT the following:

A. Damages in excess of $163,500;

B. Punitive damages;

C. Costs of this action; and

D. Any other relief as the Court deems just.

## COUNT V
## FOR ACCOUNTING AND
## IMPOSITION OF CONSTRUCTIVE TRUST
## AGAINST RALLY

64. CIT re-alleges paragraphs 1 through 27 as paragraph 64.

65. From in or about December 2004 through the present, pursuant to an assignment for the benefit of creditors by Wes-Tech, defendant Rally collected sums of money in connection with the Lease, the amount of which is not yet known to CIT.

66. On an accounting by Rally there will be found due to CIT from Rally a sum of money, the amount of which is not yet known to CIT.

67. Prior to the commencement of this action, CIT demanded of Rally that Rally account for Rally's acts and that defendant pay over to CIT the amounts due CIT under the assignment for the benefit of creditors. A copy of the demand letter is attached hereto as **Exhibit I.**

68. Rally failed and refuses to account for its actions and has never rendered any accounting for the monies received under the assignment for the benefit of creditors, nor paid over to CIT any of such monies.

69. CIT has no adequate remedy at law against Rally.

9

#167457

70. CIT is entitled to an accounting and damages.

**WHEREFORE**, CIT prays that this Court enter an order in its favor and against Rally for:

A. Rally to render a full and complete account to CIT of all moneys and property received and distributed by Rally, all income collected by Rally in its administration and all charges for compensation made by it against the property in connection with the assignment for the benefit of creditors by Wes-Tech;

B. A judgment against Rally for any sums found to be due CIT from Rally, including all income derived from the administration of CIT's moneys and/or property remaining in its possession;

C. Imposition of constructive trust over any monies and property received by Rally for its disposition of the Equipment;

D. Costs of bringing this action; and

E. Any other relief as the court deems just.

**COUNT VI
FOR ACCOUNTING AND DAMAGES
AND IMPOSITION OF CONSTRUCTIVE TRUST
AGAINST SAMUELS**

71. CIT re-alleges paragraphs 1 through 27 as paragraph 71.

72. This is an action for accounting and damages.

73. As an assignee, Samuels had fiduciary duties to CIT.

74. Samuels breached his fiduciary duties to CIT.

75. From in or about December 2004 through the present, pursuant to an assignment for the benefit of creditors by Wes-Tech to Samuels, defendant Samuels collected sums of money, the amount of which is not yet known to CIT.

76. On an accounting by Samuels there will be found due to CIT from Samuels a sum of money, the amount of which is not yet known to CIT.

77. Prior to the commencement of this action, CIT demanded of Samuels that Samuels account for Samuels' acts as assignee and that Samuels pay over to CIT the amounts due CIT under the assignment for the benefit of creditors by Wes-Tech. *See* **Exhibit I.**

78. Samuels failed and refuses to account for his actions and has never rendered any accounting for the monies received under the assignment, nor paid over to CIT any of such monies.

79. CIT has no adequate remedy at law against Samuels.

**WHEREFORE**, CIT prays that this Court enter an order in its favor and against Samuels, for:

A. Samuels to render a full and complete account to CIT for all moneys and property received and distributed by Samuels, all income collected by Samuels in his administration and all charges for compensation made by it against the property in connection with the assignment for the benefit of creditors by Wes-Tech;

B. A judgment against Samuels for any sums found to be due CIT from Samuels, including all income derived from the administration of CIT's moneys and/or property remaining in its possession;

C. Imposition of constructive trust over any monies and property received by Rally for its disposition of the Equipment;

D. Costs of bringing this action; and

E. Any other relief as the court deems just.

## COUNT VII
## IMPLIED CONTRACT
## AGAINST NEW WES-TECH

80. CIT re-alleges paragraphs 1 through 27 as paragraph 80.

81. In or about December 2004 Wes-Tech, lessee, assigned the Lease including all of Wes-Tech's rights and obligations, to Samuels, pursuant to an assignment for the benefit of creditors.

82. Samuels sold and/or transferred the Lease to New Wes-Tech.

83. New Wes-Tech then and there undertook and became liable to pay CIT the monthly rental payments due under the Lease for its use and possession of the Equipment.

84. Notwithstanding the undertaking, New Wes-Tech has failed to pay CIT the rent from in or about December 2004 through the present.

85. CIT has performed all conditions of the Lease to be performed on its part.

86. CIT has been damaged by New Wes-Tech's failure to pay in excess of $163,500.

**WHEREFORE**, CIT prays that this Court enter an order in its favor and against Samuels, for:

A. The monthly rental payments from the date of Samuels' assumption of the lease;

B. The value of the Property;

C. Attorneys' fees and costs in connection with bringing this action; and

D. Any further relief as this Court deems just and proper.

## COUNT VIII
## PERSONAL LIABILITY FOR RENT
## AGAINST SAMUELS, AS ASSIGNEE

87. CIT re-alleges paragraphs 1 through 27 as paragraph 87.

#167457

88. Samuels failed to take charge of the property to which he was entitled under Wes-Tech's assignment to Samuels for the benefit of creditors.

89. Samuels failed to manage the trust confided to him by Wes-Tech.

90. Samuels failed to preserve and protect CIT's Equipment.

91. Samuels failed to use ordinary and reasonable diligence in the execution of the trust.

92. Samuels is deemed to have accepted CIT's Lease with Wes-Tech by electing to appropriate the leasehold estate.

93. By accepting the Lease Samuels became personally liable for the rental payments due to CIT.

**WHEREFORE**, CIT, prays that this Court enter an order in its favor and against Samuels, for:

A. CIT to have judgment against Samuels for any sums found to be due CIT from Samuels;

B. The monthly rental payments from the date of Samuels' assumption of the Lease;

C. The value of the Property;

D. Attorneys' fees and costs in connection with bringing this action; and

E. Any further relief as this Court deems just and proper.

### COUNT IX
### CONVERSION
### AGAINST SAMUELS

94. CIT re-alleges paragraphs 1 through 27 as paragraph 94.

95. Since in or about November 1997, CIT is and has been the lawful owner of the Equipment delivered to Wes-Tech as lessee. *See* paragraph 7 of **Exhibit A.**

96. On or about November 27, 1997, March 11, 1998, and June 16, 1998, Wes-Tech agreed that it would pay to CIT monthly rental payments for its use and possession of the Equipment. *See* attached **Exhibits A, B,** and **C.**

97. In or about December 2004, Wes-Tech being in possession of the Equipment as lessee pursuant to the Lease, delivered the Equipment to Samuels as its agent pursuant to an assignment for the benefit of creditors.

98. Prior to the commencement of this action, CIT demanded of Samuels that he return the goods to CIT or any money received therefore, but defendant has refused to return the Equipment and/or monies received and has wrongfully converted the Equipment and the proceeds from the Equipment's sale to his own use, all to CIT's damage in excess of $163,500.

99. Samuels acted willfully and with wanton disregard of CIT's rights.

**WHEREFORE**, Plaintiff, The CIT Group/Sales Financing, Inc., prays that this Court enter an order in its favor and against defendant, Samuels, awarding CIT the following:

A. Damages in excess of $163,500;

B. Punitive damages;

C. Costs of this action; and

D. Any other relief as the court deems just.

        CIT Communications Finance Corporation
        f/k/a AT&T Credit Corporation, Plaintiff,

        /s/ Agata P. Karpowicz
        By: One of its Attorneys

Bruce Menkes (ARDC No. 6187337)
Agata P. Karpowicz (ARDC No. 6280323)
Mandell Menkes LLC
333 West Wacker Drive, Suite 300
Chicago, Illinois 60606
Telephone: (312) 251-1000

#167457