IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CIT Communications Finance Corporation f/k/a AT&T Credit Corporation, <br><br> Plaintiffs, <br> v. <br><br> Wes-Tech Automation Solutions, LLC, f/k/a Wes-Tech Automation Systems, LLC; Richard Gilchrist; Rally Capital Services, LLC; and Howard B. Samuels. <br> Defendant, | Case No. 08 CV 6458 <br><br> Judge Coar <br><br> Magistrate Judge Nolan |

# WES-TECH AUTOMATION SOLUTIONS, LLC'S
# PRE-TRIAL MEMORANDUM
# AND PROPOSED CONCLUSIONS OF LAW

Defendant, Wes-Tech Automation Solutions, LLC, by its attorneys, and pursuant to this Honorable Court's Order submits its Pre-Trial Memorandum and Proposed Conclusions of Law.

***Background***

Wes-Tech Automation Solutions, LLC (hereinafter "New Wes-Tech") was formed on November 29, 2004 as a limited liability company styled Wes-Tech Holdings, LLC. On March 8, 2005 the limited liability company's name was changed to Wes-Tech Automation Systems, LLC and then on September 15, 2005 the name was changed to its present, Wes-Tech Automation Solutions, LLC (New Wes-Tech Exhibits 6, 7 & 8).

On December 14, 2004 New Wes-Tech purchased from Howard B. Samuels, not individually, but solely as the assignee for the benefit of creditors of Wes-Tech, Inc. the assets of

Wes-Tech, Inc. pursuant to an Asset Purchase Agreement dated December 10, 2004. (New Wes-Tech Exhibit 1). That agreement provided:

> Seller hereby sells, assigns, transfers and quitclaims all right, title and interest to Purchaser free and clear of any and all mortgages and publicly recorded liens of Bank of America, N.A., (except as otherwise specified in this Agreement) all of the tangible and intangible assets of Wes-Tech, as they exist on the Closing Date, (herein collectively referred to as the "Purchased Assets"), including, but not limited to, the following:
>
> i. **Tangible Assets**. All of Wes-Tech's accounts receivable, work-in-process, customer deposits which have been deposited into the Wes-Tech Creditors' Trust account, machinery, equipment, leasehold improvements, accessories, office furniture, fixtures, web sites, urls, domain names, computer software and software licenses, vehicles, computers, computer software, officer loans and loans due from Gantrex Loaders, Inc.
>
> ii. **Real Property.** The real property commonly known as 720 Dartmouth Lane, Buffalo Grove, Illinois and all improvements thereon, to be conveyed "AS IS" and "WHERE IS" and subject to any accrued real estate taxes, transfer taxes and closing costs.
>
> iii. **Inventory**. All of Wes-Tech's inventory, used or useful in connection with the operation of Wes-Tech's business.
>
> iv. **Intangible Assets**. All of Wes-Tech's documents, assignable insurance policies, contracts, open purchase orders, sales agreements, instruments and general intangibles of every kind and nature (including goodwill), trademarks, customer lists, agent agreements, distributor agreements, line agreements, trade names, including "Wes-Tech", all patents, designs, drawings, engineering plans and work processes, all intellectual property of any kind, and all of Wes-Tech's right, *title and interest in and to all leases for real and personal property, provided that Purchaser shall not be liable on any lease, contract, sale agreement, or purchase order assigned hereunder unless and until Purchaser executes an express assumption agreement for each such lease, contract, sale agreement or purchase order.* (emphasis added)

\* \* \*

Further the agreement provided:

**LIABILITIES**. Purchaser shall not assume any obligations, liabilities or indebtedness of Seller or Wes-Tech, whether due or to become due, absolute or contingent, direct or indirect, asserted or unasserted, and whether relating to the business of Wes-Tech or otherwise, except Purchaser shall agree to pay, in addition to the Purchase Price, the cure

costs and all other obligations of Wes-Tech under leases, supply agreements and any other contracts that Purchaser deems necessary in connection with the operation of the business or relating to the use of the Purchased Assets and expressly assumed by Purchaser, in writing, at or prior to the Closing.

Approximately six months later, on or about June 24, 2005, New Wes-Tech acquired through e-Bay a Merlin Legend telephone system and that system was installed at the premises occupied by New-Wes Tech within the following 30 days. The new system was s complete system. (New Wes-Tech Exhibit 2)

On October 23, 2007, CIT Communications Finance Corporation, by letter from its attorneys first demanded return of "certain leased telephone equipment." (New Wes-Tech Exhibit 5)

On November 10, 2008, CIT filed this lawsuit.

## ANALYSIS

### *Conversion*

A cause of action for conversion requires the plaintiff to prove by a preponderance of the evidence that (1) plaintiff has a right to the property; (2) plaintiff has an absolute and unconditional right to the immediate possession of the property; (3) plaintiff made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property. *Cirrincoine v. Johnson*, 184 Ill.2d 109; 703 N.E.2d 67 (Ill. 1998)(citations omitted). "The essence of conversion is not acquisition by the wrongdoer but a wrongful deprivation of the owner thereof." *Jensen v. Western Ind. R.R. Co.*, 94 Ill.App.3d 915, 932; 419 N.E.2d 578, 592 (1st Dist. 1981). A detention of another's personal property which rightfully came into one's possession is not an actionable conversion. *Hobson's Truck*

*Sales, Inc. v. Carroll Trucking, Inc.*, 2 Ill.App.3d 978, 982; 276 N.E.2d 89, 91 (3rd Dist. 1971), *citing, Nelen v. Colwell*, 45 R.I. 465, 123 Atl. 879. Although in some instances where an independent act of conversion may obviate the need for demand; however, in most instances where a party rightfully came into possession of the property, a demand is necessary. *Hobson Truck Sales, Inc.*, 2 Ill.App.3d at 981-2.

The general measure of damages for conversion of personal property is the market value of the property at the time and place of conversion plus legal interest. *Jensen v. Western Ind. R.R. Co.*, 94 Ill.App.3d 915, 933; 419 N.E.2d 578, 593 (1st Dist. 1981). (Citations omitted).

In *Hobson's Truck Sales, Inc. v. Carroll Trucking, Inc.*, 2 Ill.App.3d 978, 982; 276 N.E.2d 89, 91 (3rd Dist. 1971), the defendant, Carroll Trucking, Inc. came into possession of the truck from Harold Wildhaber who was a contract purchaser from plaintiff. Wildhaber was in default in his obligations to plaintiff at the time he allowed Carroll Trucking, Inc. to use the vehicle. An accident occurred while Carroll Trucking, Inc. was using the truck and the vehicle was destroyed. The court held that no conversion occurred by Carroll Trucking, Inc. as there was no evidence of any act by Carroll to show that Carroll was attempting to convert the property to its own use to the exclusion of the rights of plaintiff.

Here, as in *Hobson*, New Wes-Tech rightfully came into possession of the property pursuant to a valid purchase of the assets of Wes-Tech, Inc. through the assignee for the benefit of the creditor's for Wes-Tech, Inc. Therefore, a demand is necessary and plaintiff's failure to demand a return of its property for nearly three years following the last payment it received is fatal to plaintiff's cause. Further, plaintiff is wholly unable to prove by a preponderance of the evidence what property if any was located at the premises now occupied by New Wes-Tech on

December 17, 2004, the date the assets were acquired by New Wes-Tech. Therefore, plaintiff's claim should fail.

In the event that this court deems that Wes-Tech, Inc. is liable to CIT for conversion, only nominal damages should be awarded. A "plaintiff has the burden of proving damages to a reasonable degree of certainty." *Haslund v. Simon Property Group, Inc.*, Defendant-Appellant, 378 F.3d 653, 2004 U.S. App. LEXIS 16226, (7th Cir. 2004). Here, the evidence will show that the original value of the equipment leased to Wes-Tech, Inc. was $57,902.00. On the alleged date of conversion, CIT asserts that the value of the Equipment was $86,304.94. During the approximate 72 months that Wes-Tech, Inc. leased the equipment from CIT it would have been obligated to pay $119,318.40, an amount more than double the original cost of the equipment. The amount is calculated by multiplying the principal obligation on the leases $1,459.93, $59.15, and 138.12 by 72 payments. Further, on June 24, 2005, New-Wes Tech acquired a Merlin Telephone system to replace the phone system that existed at its facility on e-Bay for the sum of $1,999.00.

### *Implied Contract*

A claim in quasi-contract is established when "the defendant has unjustly retained a benefit to the plaintiff's detriment, and ... defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Midcoast Aviation, Inc. v. General Electric Credit Corp.*, 907 F.2d 732, 737 (7th Cir. 1990), citing *HPI Health Care Serv., Inc. v. Mt. Vernon Hosp.*, 131 Ill.2d 145, 545 N.E.2d 672 (1989). The *Midcoast Aviation* court explained that under Illinois law quasi-contact is "an obligation similar in character to that of a contract, but which arises not from an agreement of the parties but from some relation between them." The obligations imposes arise not from a mutual consent, but from an implication of law

that arises from the facts and circumstances independent of an agreement of the parties of their presumed intention. These duties arise in situations when there has been an unjust enrichment where "one person received money or its equivalent under such circumstances that in equity and good conscience ought not be retained by the defendant and which according to the right and good belongs to another ." If a quasi-contract situation exists an obligation is imposed upon the receiver to avoid the *unjust* enrichment. *Midcoast Avaition* at 737 (citations omitted)

### *Quantum Meruit*

*Quantum meruit* is a niche of quasi-contract law. The essence of *quantum meruit* liability is "the receipt of a benefit by one party which would be inequitable for that party to retain." *Midcoast Aviation, Inc. v. General Electric Credit Corp.*, 9907 F.2d 732, 737 (7th Cir. 1990), citing, *Telander v. Posejpal*, 94 Ill.App.3d 616, 418 N.E.2d 444 (1981). The elements of *quantum meruit* liability are the performance of services by the plaintiff, the receipt of the benefit without compensating the plaintiff. *Midcoast Aviation* at 737 (citations omitted). Since the basis of recovery under quantum meruit is that it would be unjust to permit a defendant to retain a benefit from a plaintiff without compensating plaintiff, the measure of recovery is the reasonable value of plaintiff's services. *Harry H. Ellis, d/b/a Photo America of Chicago, Inc., v. Photo America Corporation*, 113 Ill. App. 3d 493; 447 N.E.2d 852 (1st Dist. 1983)

Here, A T & T Credit Corporation entered into a lease, and two additional leases, with Wes-Tech Inc. the first being dated February 25, 1998. All of the leases were written so that they shared a common termination date 60 months from the inception of the original lease or January 31, 2003. The lease contains an automatic renewal provision. At the end of any term of the lease, Wes-Tech, Inc. would have the option to return the equipment, continue the lease, or

pay the fair market value for the equipment as determined by lessor. After several name changes A T & T Credit Corporation became CIT Communications Finance, Inc.

Here, CIT asserts that the loss of use damages under either implied contract or *quantum meruit* equal $77,237.62 calculated by extending the payments due pursuant to the former Wes-Tech, Inc. leases through the current date. As the measure of damages is the amount required to make the use *just* plaintiff must show the *reasonable* value of New Wes-Tech's use of the equipment and that New Wes-Tech actually used the equipment.

## *Laches*

Laches bars a party's requested relief, where, because of that party's delay in asserting a right, the other party has been misled or prejudiced. *The County of DuPage v. K-Five Construction Corporation*, 267 Ill.Spp.3d 266, 642 N.E.2d 164 (2nd Dist. 1994). While delay alone will not constitute laches, it would be inequitable and unjust to grant one party relief if the other party relied on the circumstances complained of to its detriment and the delay was unreasonable. *Id.* at 275. The failure to assert a right acts as an abandonment of one's right. *Baylie v. Swift*, 283 Ill.App.3d 421, 670 N.E.2d 772 (1st Dist. (1996).

Here, CIT's claims should be barred by the doctrine of laches. CIT's delay in making any demand for return of its claimed equipment until October 23, 2007, nearly three years after New Wes-Tech acquired the assets from the assignee was unreasonable and works severely to New Wes-Tech's detriment as the property had already been disposed. While had a timely demand been made, New Wes-Tech could have determined what property belonged to CIT and returned it.

## *Opinion Testimony*

Regarding opinion testimony at trial, Federal Rule of Evidence 701 provides:

**Opinion Testimony by Lay Witnesses.** If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to

those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Federal Rule of Evidence 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The Notes of Advisory Committee on Rules for Rule 702 provide, "The rule is broadly phrased. The fields of knowledge which may be drawn upon are not limited merely to the "scientific" and "technical" but extend to all "specialized" knowledge. Similarly, the expert is viewed, not in a narrow sense, but as a person qualified by "knowledge, skill, experience, training or education." Thus within the scope of the rule are not only experts in the strictest sense of the word, e.g., physicians, physicists, and architects, but also the large group sometimes called "skilled" witnesses, such as bankers or landowners testifying to land values."

Regarding Rule 701, the Notes of Advisory Committee on 2000 amendments provide:

Rule 701 has been amended to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing. Under the amendment, a witness' testimony must be scrutinized under the rules regulating expert opinion to the extent that the witness is providing testimony based on scientific, technical, or other specialized knowledge within the scope of Rule 702. *See generally Asplundh Mfg. Div. v. Benton Harbor Eng'g,* 57 F.3d 1190 (3d Cir. 1995). By channeling testimony that is actually expert testimony to Rule 702, the amendment also ensures that a party will not evade the expert witness disclosure requirements set forth in Fed.R.Civ.P. 26 and Fed.R.Crim.P. 16 by simply calling an expert witness in the guise of a layperson. *See Joseph, Emerging Expert Issues Under the 1993 Disclosure Amendments to the Federal Rules of Civil Procedure,* 164 F.R.D. 97, 108 (1996)

Rule 701 requires that the opinion be based on personal knowledge; the Rule is not designed to encourage speculation on the part of witnesses concerning events that they have not perceived. Nor is the Rule designed to permit completely hypothetical testimony. The Rule implies that the Judge may exclude opinion evidence if it is confusing; or if it is not helpful in clarifying the testimony of the witness and in understanding the facts of the case; or if it goes well beyond the facts presented. *See, e.g., Washington v. Department of Transp.*, 8 F.3d 296 (5th Cir. 1993) ("speculative opinion testimony by lay witnesses -- i.e., testimony not based upon the witness' perception -- is generally considered inadmissible").

### *Equipment as a Fixture*

Under Illinois law, goods become fixtures where the goods become an integral part of the building and cannot be removed without material injury to the building. *Davis Store Fixtures, Inc. v. The Cadillac Club*, 60 Ill.App.2d 106, 109; 207 N.E.2d 711, 713 (2nd Dist. 1965). Where wiring and outlets are placed in the walls, the courts have held that such wiring is a fixture. *See, California Steel Company v. Dodds*, 21 B.R. 383 (Bk.N.D.Ill. 1982); *Miller v. Reed*, 13 Ill.App.3d 1074, 1078, 302 N.E.2d 131,134 (5th Dist. 1973).

### *Punitive Damages*

Punitive damages are awarded "when torts are committed with fraud, actual malice or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others." *Cirrincoine v. Johnson*, 184 Ill.2d 109; 703 N.E.2d 67 (Ill. 1998)(citations omitted).

## PROPOSED CONCLUSIONS OF LAW

1. To prevail in its claim for conversion against New Wes-Tech, CIT is required to prove by a preponderance of the evidence that (1) CIT has a right to the property; (2) CIT has an absolute and unconditional right to the immediate possession of the property; (3) CIT made a demand for possession; and (4) New Wes-Tech wrongfully and without authorization assumed

control, dominion, or ownership over the property. *Cirrincoine v. Johnson*, 184 Ill.2d 109; 703 N.E.2d 67 (Ill. 1998)

2. CIT failed to prove a conversion by New Wes-Tech as CIT failed to prove by competent evidence that equipment of CIT's was located at New Wes-Tech's premises and because no demand for return of the goods was made to New Wes-Tech in a timely manner. *Hobson's Truck Sales, Inc. v. Carroll Trucking, Inc.*, 2 Ill.App.3d 978; 276 N.E.2d 89 (3rd Dist. 1971),

3. Under Illinois law, the measure of damages for conversion is the fair market value of the property at the time of conversion., *Harry H. Ellis, d/b/a Photo America of Chicago, Inc., v. Photo America Corporation*, 113 Ill. App. 3d 493; 447 N.E.2d 852 (1st Dist. 1983) and it is plaintiff's burden to show a reasonable basis to determine the value of the items converted. *Scheduling Corporation of America v. Massello*, 119 Ill.App.3d 355; 456 N.E.2d 298 (1st Dist. 1983) CIT Communication Finance Corporation failed to introduce competent evidence regarding the fair market value of its equipment at the time of the alleged conversion.

4. To prevail in its claim for *Quantum Meruit* against New Wes-Tech, CIT is required to prove by a preponderance of the evidence the performance of services by the CIT, the receipt of the benefit without compensating CIT by New Wes-Tech. *Midcoast Aviation, Inc. v. General Electric Credit Corp.*, 9907 F.2d 732, 737 (7th Cir. 1990).

5. CIT failed to prove by competent evidence that New Wes-Tech is liable to CIT under the theory of *Quantum Meruit* because CIT has failed to prove what if any services or equipment were furnished by CIT to New Wes-Tech.

6. Under Illinois law, the damages in a quasi-contract the measure of recovery is the reasonable value of plaintiff's services. *Harry H. Ellis, d/b/a Photo America of Chicago, Inc., v.*

*Photo America Corporation*, 113 Ill. App. 3d 493; 447 N.E.2d 852 (1st Dist. 1983) CIT Communication Finance Corporation failed to introduce competent evidence regarding the reasonable value of New Wes-Tech's use of its equipment.

7. CIT Communication Finance Corporation's claims against New Wes-Tech are barred by laches because of CIT Communication Finance Corporation's lack of diligence in making a demand for the return of its property until after the property was disposed of by New Wes-Tech caused prejudice to New Wes-Tech and because CIT's delay in making its demand after it was aware that its lessee was no longer in possession of the premises was unreasonable. *The County of DuPage v. K-Five Construction Corporation*, 267 Ill.Spp.3d 266, 642 N.E.2d 164 (2nd Dist. 1994).

8. CIT Communications Finance Corporation is not entitled to punitive damages as CIT failed to produce competent evidence that New Wes-Tech acted fraudulently, with actual malice or willfully, or with such gross negligence as to indicate a wanton disregard of the rights of CIT. *Cirrincoine v. Johnson*, 184 Ill.2d 109; 703 N.E.2d 67 (Ill. 1998)

9. That the wiring installed by CIT become fixtures as the wiring is an integral part of the building and cannot be removed without material injury to the building. *Davis Store Fixtures, Inc. v. The Cadillac Club*, 60 Ill.App.2d 106, 109; 207 N.E.2d 711, 713 (2nd Dist. 1965), since the wiring is run behind walls and attached to the walls of the building.

Respectfully Submitted,

**WES-TECH AUTOMATION SOLUTIONS, LLC**

/s/ Frank J. Wesolowski
By its attorneys

Frank J. Wesolowski
**Morrisroe & Associates, Ltd.**
114 South Bloomingdale Road
Bloomingdale, IL 60108
(630)539-0880
(630-539-0829 (fax)